[Civil No. 3336. Filed February 19, 1934.]

[29 Pac. (2d) 483.]

In the Matter of the Disbarment of OTTO E. MYR-LAND, an Attorney of This Court.

Mr. Arthur T. La Prade, Attorney General, and Mr. P. H. Brooks, Assistant Attorney General, for the State.

Mr. Henderson Stockton and Mr. Thomas A. Flynn, for Respondent.

LOCKWOOD, J.—This is an original proceeding in disbarment. The record shows that one U. S. Kay, of Tucson, Arizona, made complaint against Otto E. Myrland, hereinafter called respondent, an attorney of that city, charging him with unethical conduct in regard to a case which Myrland had handled for Kay. A grievance committee of the state bar association investigated the complaint and recommended that disbarment proceedings be instituted against respondent, and the Attorney General therefore brought the matter before us. A referee was duly appointed and evidence taken, which has been examined by the court.

The charges against respondent may be divided into three classes: (1) Unethically obtaining employment; (2) wrongfully failing to notify his client of money coming into respondent's hands, which belonged to his client; and (3) wrongfully withholding money which belonged to his client. All three of these charges allege conduct contrary to the ethics of the legal profession, and any one of them, if proved, is sufficient ground for such discipline as this court may think it proper to administer.

This is one of the very few cases in which this court sits as ultimate trier of fact, as well as to judge the law. We are of the opinion that while disbarment

proceedings are not, strictly speaking, criminal in their nature, they are *quasi* so, and, while the evidence need not necessarily show beyond a reasonable doubt that a respondent has been guilty of unprofessional practices, it must at least be clear and convincing to that effect, before we should impose a penalty therefor.

Briefly stated, the undisputed facts appearing from the record are as follows: Kay was injured in an automobile accident and taken to a hospital in Tucson. While he was there, Myrland came to the hospital, and was retained by him for the purpose of bringing an action against the person owning the automobile which had injured him. The action was duly filed and tried for some two and one-half days, at the end of which time a voluntary nonsuit was taken by plaintiff. Thereafter a new action was promptly filed and tried, which resulted in a verdict in favor of plaintiff in the sum of $845. Shortly after the judgment was rendered, the defendant made an arrangement for the payment of $500 of the judgment in cash and the balance at $50 per month, commencing August 1, 1932, which full sum was eventually paid in the manner agreed on. Respondent, claiming that he had a contract with Kay for a contingent fee of 50 per cent. of the recovery, retained the full sum of $422.50 out of the first payment by the judgment debtor, and paid the doctor's and hospital bills, and then, and not until then, began paying to Kay the balance of the judgment, as the money was received under the agreement with the judgment debtor.

So far as the manner in which respondent came to be employed by Kay is concerned, there is a conflict with the evidence, Kay claiming that he had nothing to do with it until after Myrland had come and represented to him that he was his attorney, the implication being that respondent had thrust his services upon Kay. Respondent, on the other hand, testified

that he was called, either by Dr. Gotthelf, who was Kay's medical attendant, or some nurse at the hospital, to come out and see Kay. We are of the opinion that upon the whole record we cannot say the evidence is clear and convincing that there was anything unethical in the manner in which respondent originally appeared at the hospital. Certainly after he did arrive there, Kay either employed him directly or, at least, acquiesced in and approved of his bringing the action which he afterwards did file. So far as the record shows, respondent diligently and faithfully, and at considerable labor, prosecuted the action to judgment, and, indeed, there is no charge that his conduct from the time of his employment up to the securing of the judgment was not, in all respects, such as should exist between an attorney and his client.

The second charge is that he failed to notify his client immediately upon his receiving part of the amount of the judgment from the judgment debtor. The record shows that he did not give such notification for a month or six weeks after the receipt of $500 on the judgment, but respondent has proved certain extenuating circumstances which we think are sufficient to relieve him from the charge of unethical conduct in this respect.

The third and most serious charge is that of "wrongfully withholding money which belonged to his client." On a careful consideration of the evidence, we believe that this charge is sustained. There is a dispute as to the amount of fee which respondent was to receive, Kay claiming that it was 25 per cent. of the judgment, and respondent insisting that it was 50 per cent. On this point, on the whole record, we are inclined to believe the preponderance of the evidence is in favor of respondent, and that it was agreed that he was to receive as a fee, contingent upon success, 50 per cent. of the judg-

ment recovered. While this percentage is large, yet it is not uncommon for attorneys in doubtful cases to make such a contract. Under the old common law, of course, contingent fees were either not allowed, or at the best merely tolerated, but in more modern times it is recognized that unless they are permitted, many worthy but impoverished litigants will be denied justice, because they cannot secure competent legal assistance for lack of enough to pay at least a reasonable retainer. It may be that legislation regulating the amount of contingent fees would be advisable, but, except in regard to certain classes of personal injury cases, differing essentially from that of Kay, there is no law in Arizona regulating such fees, and we cannot say that it was contrary to the accepted standards of legal ethics for respondent to contract for such an amount, provided the contract was fairly made. But we are decidedly of the opinion that it was unethical for him to retain the full amount of his fee, before making any payment to or on account of his client. The very nature of such a contract implies that the proceeds of a judgment shall be divided as received on the percentage agreed to, in the absence of a specific agreement that one or the other was to retain a greater percentage of the initial payments. The reason for and the justice of this rule is so obvious that we need do no more than state it. We are of the opinion that, by his own admissions, respondent is guilty of the last charge of wrongfully withholding money which belonged to his client.

The only thing which remains for our consideration is as to the penalty which should follow. In determining this we consider the age and experience of respondent, the fact that such conduct, although reprehensible and contrary to the ethical standards of the profession, has perhaps been practiced with impunity in Arizona by other and older members of the

profession in the past, and the recommendation of the local committee which investigated the case, and some of the more prominent attorneys of the Tucson bar. We are of the opinion that in view of all these circumstances, a disbarment, or even a suspension of the respondent, would be too severe a penalty for the offense of which he has been guilty, and we confine our action to a statement of our opinion of the character of his conduct, and a formal reprimand of respondent therefor. We take this occasion, however, to notify the bar at large that a future offense of the same nature on the part of any attorney, after the warning which we now give, will not be treated so lightly.

ROSS, C. J., and McALISTER, J., concur.