[Civil No. 3574.   Filed October 21, 1935.]

[50 Pac. (2d) 564.]

In the Matter of ISAAC BARTH, a Member of the State Bar.

Mr. James E. Nelson, for the State Bar.

Messrs. Mathews & Wheeler, for Respondent.

McALISTER, J.—This is a disbarment proceeding against Isaac Barth, a member of the Bar of Arizona. It was commenced by filing with the State Bar the affidavit of Eduardo Castillo of St. Johns, Apache county, Arizona, charging him with the embezzlement of $1,700 belonging to Elena Castillo, a minor. By act of the Eleventh Legislature, chapter 66 of the Session Laws of 1933, the Bar of Arizona was made a body corporate and as such charged with certain duties relative to the disbarment, suspension and discipline of its members.

The ruling body of that corporation is a board of governors composed of eleven members of the bar elected from the six Bar Districts in which the act divides the state, and the affidavit of Castillo was referred to the local administrative committee of District No. 6, Maricopa county, in which respondent resided. The board of governors will be referred to hereafter as the board and the local administrative committee as the committee.

The affidavit upon which the proceedings are based is in the following language:

"State of Arizona, County of Maricopa—ss.

"Eduardo Castillo being first duly sworn upon oath says: that he is the guardian of Elena Castillo, a minor, and that the said Elena Castillo is the legitimate child of affiant; that on or about the 25th day of June, 1929, one Dodd L. Greer, Attorney-at-Law of St. Johns, Apache County, Arizona made, executed and delivered his certain check drawn on the Round Valley Bank of Springerville, Arizona, for the principal sum of Seventeen Hundred ($1700) Dollars, and in favor of affiant as guardian of the person and estate of Elena Castillo, a minor; that thereafter affiant at the instance and request and advise of the said Isaac Barth, affiant endorsed said check by signing his name on the back thereof, and the said Isaac Barth, who appears as an endorser on said check wrote in

the words 'as guardian of the person and the estate of Elena Castillo; that the said Seventeen Hundred ($1700) Dollars was paid to your affiant by the said Dodd L. Greer, who was then the administrator of the estate of Lucy Elia Castillo and said Seventeen Hundred ($1700) Dollars, represented an amount due the said Elena Castillo, a minor as support money or family allowance and was the money belonging to the said minor; that the said Isaac Barth advised affiant that he had deposited said money in the bank to the credit of affiant as guardian for said minor, and instead of so doing, the said Isaac Barth with the intent to deprive said minor from her only source of livelyhood did steal and embezzle said money; that at the said time the said Isaac Barth was well acquainted with the facts in this matter and well knew that the said Elena Castillo, a minor did not owe the said Isaac Barth any money whatsoever, and well knew that no court had ever authorized the said Isaac Barth to take said money and well knew that the said money did not belong to affiant, but was the sole property of said minor child; that in order to cover his wrong doings in this matter, the said Isaac Barth thereafter represented to the Superior Court of Navajo County, said estate having been prior thereto transferred to the Superior Court of Navajo County, that there was no legal guardian to represent said minor child, and that certain irregularities had been committed in the administration of said estate, and was then appointed guardian *ad litem* for said Elena Castillo, a minor; that affiant used every deligent effort at his command to get the said Isaac Barth, the guardian *ad litem* for said minor child, and acting as attorney for said minor child, to adjust and get a final determination of the rights and property which said minor might have in said estate at said time, but the said Isaac Barth well knowing that he had stolen and embezzled said Seventeen Hundred ($1700) Dollars refused to take any action in the matter and affiant was compelled to obtain an order from the Superior Court of Navajo County, discharging the said Isaac Barth as such guardian *ad litem;* that since that time affiant has attempted to get the said Isaac

Barth to pay your affiant the said sum of Seventeen Hundred ($1700) Dollars belonging to the said minor, and the said Isaac Barth has always refused and neglected to pay the same or any part thereof, and has at all times deprived the said minor child from the use and benefit of said Seventeen Hundred ($1700) Dollars;

"That affiant makes this affidavit for the purpose of bringing this matter to the attention of the State Bar Association of the State of Arizona, in order that they might take whatever action they deem advisable in the premises.

"[Signed] EDUARDO CASTILLO.

"Subscribed and sworn to before me this 28th day of June, A. D., 1934.

"[Seal]                         [Signed] W. S. NORVIEL.

"My Commission Expires 6/28/35."

Upon the filing of this affidavit the committee served upon respondent an order to show cause why he should not be disbarred for professional misconduct, and in response thereto he answered the charge, and on August 20, 1934, had a hearing before the committee. The matter was gone into at that time, several witnesses, including respondent, giving testimony, and under date of September 7th, following, the committee made a report to the board which included the charges, the evidence, and its recommendation that respondent be disbarred.

Upon receipt of this report the board caused a copy of it to be served on the respondent, who, in answering, adopted the allegations of his answer filed before the committee, and, in addition, denied the findings of that body and pointed out the particulars in which he alleged it had erred. The matter was heard by the board on November 2d and 3d, 1934, nine members being present. In addition to the transcript of the record of the hearing before the committee the board had before it the testimony of

several witnesses who did not testify at that proceeding and of additional testimony by the respondent. At the conclusion of the hearing, the board decided to make no definite recommendation but by a vote of eight to one adopted a resolution stating that it deemed the evidence sufficient to merit further action and directing the secretary of the board to file the record of the proceedings with the clerk of the Supreme Court.

Upon receipt of the record this court directed the issuance of an order to show cause and in response thereto respondent moved to dismiss the proceedings, and a few days later filed a lengthy answer in which he set forth substantially what he had alleged in his answers before the committee and the board and some additional facts which the developments at those hearings, he felt, made pertinent and necessary.

Whether respondent should be disciplined depends wholly upon what he did in connection with the $1700. If this was the property of the guardian of the minor, Elena Castillo, and he appropriated it, or any portion of it, to his own use, he was guilty not merely of unprofessional conduct but of a crime and should be both prosecuted and disbarred. A statement of the facts pertaining to this transaction will disclose the nature of his connection therewith.

It appears from the record that Lucy Elia Castillo died in March, 1919, leaving a rather large estate in Apache county, Arizona, and a child, Elena, about eight months old. The Stockmen's State Bank of St. Johns was appointed administrator of the estate and the father of Elena Eduardo Castillo, and this bank were made joint guardians of her person and estate. By virtue of her father's assignment to her of his interest in the estate she became the sole heir of her mother.

In December, 1922, the Stockmen's State Bank failed and in February, 1924, Dodd L. Greer, of St. Johns, Arizona, was appointed in its stead administrator of the estate. After the bank closed its doors there was no guardian of the minor's estate, though her father, the guardian of her person, seems to have been regarded as such.

It might be well to state that Lucy Elia Castillo, the mother of Elena, was the daughter of Nasif Tamer, a native Syrian, and his wife Elena Elia. Nasif died in Apache county, Arizona, on December 23, 1916, Lucy Elia on March 22, 1919, and Elena Elia the following day. The Nasif Tamer estate inventoried around $60,000 early in 1917, and at his death passed to his wife and daughter. Upon their deaths Elena, the minor child of Lucy Elia, following the assignment to her of her father's interest in her mother's estate, became, by virtue of the will of her grandmother to her mother and of paragraph 1218, Revised Statutes of 1913 (Civil Code), the sole heir to this property which changed but little in value between the death of Nasif Tamer and the passing of his wife and daughter. The estates of these three persons were probated in Apache county, and the administrator's final account and report in the estate of Lucy Elia Castillo was filed on January 15, 1929. It showed that he had in his possession on that date, belonging to the estate, $1,200 in cash, a house and lot in St. Johns, Arizona and some stock in two corporations which, the testimony discloses, had little, if any, value. The house and lot, though purchased by the administrator for $1,500, was said by several witnesses to have a value not exceeding six or seven hundred dollars. This means that an estate of around $60,000 in 1917 had, during the process of the administration of the three estates,

decreased in value to such an extent that it was worth less than $2,500 in January, 1929.

Eduardo Castillo, guardian of the child and only heir, was dissatisfied with this final account and report and very soon after it was filed engaged respondent to enter objections to it. The employment was accepted and, according to his testimony, respondent began immediately a search of the records of the three estates to ascertain whether the account and report as filed was correct. He testified that he spent more than a month in St. Johns going over the files and visiting various sections of the county in an endeavor to learn what had become of the different ranches of Nasif Tamer for whom he had previously acted as attorney, and the record shows that on February 21, 1929, the court granted him permission to remove these files to his office in Phoenix for a period of ten days to enable him to prepare exceptions to the final account and report, the hearing of which was then set for March 11th. He filed objections on March 2d and shortly thereafter the administrator filed a second final account and report, and he objected to it also. In fact, it was, according to respondent, amended several times, some property being added in each instance, and to each amended report an objection was filed by respondent.

On June 25, 1929, however, the administrator and the respondent as attorney for the guardian reached an agreement, a compromise whereby the administrator agreed to pay, and the guardian to accept, the sum of $4,200 in settlement of the estate to be paid as follows: $1,700 in cash and $2,500 by delivery to the guardian of the promissory note of the administrator, Dodd L. Greer, in that sum, payable to him on June 1, 1930. The guardian agreed in addition to withdraw his objection to the approval of the final

account and report. In compliance with the agreement the administrator then handed the respondent his check for $1,700, dated the same day, and drawn on the Round Valley Bank of Springerville, Arizona, in favor of Eduardo Castillo as guardian of the person and estate of Elena Castillo and requested that he hold it for a few days. At the time Castillo was working on a ranch thirteen miles out of St. Johns and upon receipt of the check respondent sent his brother, Maurice Barth, to bring him to town and when he came in explained to him that he had sent for him because he had a check for $1,700 that Dodd L. Greer had given him for the little girl, and asked him to endorse it, stating, according to Castillo, that he was going to place it in the bank in her name. Castillo complied with the request by signing his name merely, his testimony being that the words, "as guardian of the person and estate of Elena Castillo," were not on the check when he did so, though respondent stated that he had placed them there before he requested Castillo to endorse it. Respondent denied stating he would place the $1,700 to the credit of the minor, and, instead of doing so, deposited it to his account in the First National Bank of Phoenix because, he testified, the drawer had asked him not to present it for payment for a few days. It was paid in due course, however, but, according to Castillo, no part of it ever reached him or the minor, though he did say, "he was turning over to me $700 in the Barth Mercantile Company."

Respondent testified, upon the other hand, that Castillo and the minor received the benefit of the full $1,700, his explanation of the manner in which this came about being as follows: By the terms of his employment Castillo, as guardian, had agreed to pay him for his services a fee of twenty-five per cent. of

the amount he recovered for the estate. He secured a settlement for $4,200 and, therefore, had a right to apply twenty-five per cent. of this in payment of his fee. He did apply $1,000 of it for this purpose and retained the remaining $700 also, but in lieu of the latter paid for the benefit of the guardian and the minor, by giving the Barth Mercantile Company credit on attorney's fees it owed him, $268 for supplies it had, upon his request, let the guardian have, and $200 in settlement of two loans of $100 each Maurice Barth had made to Castillo to be used in protecting the estate. In place of the balance of the $700 he endorsed and delivered to Castillo two notes of $125 each executed that day in his favor by Dodd L. Greer in settlement of his portion of an attorney's fee Greer had collected in the case of Duke v. Somebody. These notes were payable sixty and ninety days from August 1, 1929, and respondent testified that the Barth Mercantile Company which was owned by one of his brothers and two of his sisters, agreed that the little girl should get the benefit of these notes in the way of future advances whether Dodd L. Greer paid them or not. However, they were never turned over to the Barth Mercantile Company and were never paid by Greer, and the record does not show that any advance of merchandise to Castillo as guardian was made on this account thereafter.

The note for $2,500, according to respondent, was delivered to Castillo on June 25, 1929, at the time the $1,700 check was endorsed, though Castillo testified that it was turned over to him some time in August, 1929, and not before. It was later repudiated by the maker, never paid and according to Castillo destroyed when the house in which he lived was burned. No suit was ever brought to collect it.

Upon learning of the check transaction in August, 1929, the Judge of the Superior Court of Apache County, Honorable A. S. GIBBONS, "was very perturbed" and instructed respondent to return the $1,700 to Castillo. Compliance with this direction was refused, the respondent stating that he did not have the money and if he did have it he would not return it. Castillo thereupon, in the presence of the judge and at his request, discharged respondent as attorney, and a little later swore to a criminal complaint accusing him of embezzling the $1,700. The charge, however, was not prosecuted and about eighteen months afterwards Castillo re-employed respondent as his attorney and also had him appointed guardian *ad litem* of the estate of the minor, Elena, the record disclosing that Castillo had not in fact qualified as such. Respondent accepted the employment and agreed to give his services, among which was the filing of a suit on the $2,500 note, without any further fee. However, he was later discharged by the court as guardian *ad litem*.

The contract of employment, the compromise settlement with the administrator and the disposition of the proceeds of the $1,700 check, as shown above, were made without the court's knowledge or approval, though the testimony of Castillo was that when he asked respondent how much his fee would be, he replied, "We will leave that to the court," a statement that was corroborated by Monico Garcia who testified that he was present when the agreement was made. This, of course, was in direct conflict with the testimony of the respondent that he was to receive twenty-five per cent. of the amount recovered.

Respondent testified at great length concerning the manner in which the administrator had mismanaged the estate, the burden of his statement being that it

had dwindled from $35,000 in February, 1924, when he took charge of it, to practically nothing. He called attention to a number of acts on the administrator's part, which, he contended, seriously affected it, for the purpose of disclosing the amount of labor they made it necessary for him to perform in order properly to check the final account and report. These facts were pertinent in so far as the reasonableness of his fee may have been involved but had no bearing on the question whether he was guilty or innocent of wrongdoing in disposing of the proceeds of the $1,700 check in the way he did. Even if every accusation he made against the administrator were true, the character of his actions in connection therewith would still be the same. But whether they constitute the crime of embezzlement it is not necessary to determine, because, even though they do not, there is no escape from the conclusion that they do show conduct unethical in the extreme.

In fulfilling his engagement to file exceptions to the final account and report, respondent undoubtedly earned a reasonable fee, but it must be kept in mind that in performing this service he was dealing with the guardian of a minor, at least one who had been so regarded; that while a guardian may under the statute employ counsel to aid him in properly protecting his ward's estate and out of the proceeds thereof pay for such services, he makes disbursements of this character entirely at his own risk for the reason that if the court should think such a payment excessive, or not justified at all, it would be its duty to disapprove it in part or *in toto*, as the case might be, and in such instances the estate is the loser to the extent of the disapproval unless the guardian or his bondsman is able to return it. Respondent, having practiced law with great ability for more than twenty-

five years, could not have been without knowledge of this. He likewise knew that Castillo was wholly without means and should have known that he was not the guardian of the estate and, therefore, in a position to answer either personally or through a bondsman for any disbursement of the funds of his ward the court would not approve. To advise him to pay an attorney's fee of $1,000 out of the $1,700, the only cash collected or to be collected for nearly a year from that date, when it should have been plain to him, as it would have been to any other reasonable person, that no court would, under the circumstances, have approved such a payment, discloses conduct, to say the least, inconsistent with the best interests of his client who, the evidence discloses, spoke English only brokenly, was easily influenced and not very bright mentally, and who in consequence of this relied upon him in a much greater degree than would an intelligent person more familiar with such duties.

■ Even if there were no question as to respondent's right to apply twenty-five per cent. of the amount recovered to the payment of his fee, he still was not authorized or permitted to treat a note for $2,500, payable eleven months hence, as cash and take twenty-five per cent. of it also, or $625, out of the $1,700 in satisfaction of that portion of his fee. As far as he could have gone under this view was to have paid himself twenty-five per cent. of the $1,700 only, or $425, since the $2,500 represented by the note was not collected and did not in fact become due until June 1, 1930, or nearly a year later. No one could possibly know at that time whether it would ever be paid, yet respondent, in paying himself, treated it as cash and compelled Castillo to take the entire risk of its payment when due. His right to a portion of the $2,500 did not mature until the note was paid and to

have retained one-fourth of it was so unethical as to call for the exercise by this court of its disciplinary power. This same situation was presented in the case of *In re Myrland*, 45 Ariz. 484, 29 Pac. (2d) 483, 484. The respondent had secured a judgment for $845 upon a fifty per cent. contingent fee basis and some time thereafter the judgment debtor paid $500 thereon and arranged to satisfy the $345 at the rate of $50 per month. The respondent took his entire fee of $422.50 and satisfied the bills of the doctor and the hospital out of the $500 and the remainder of this payment amounting to a very few dollars and the monthly installments of $345 went to his client. Such conduct was held unethical, the following language being used:

" . . . . But we are decidedly of the opinion that it was unethical for him to retain the full amount of his fee, before making any payment to or on account of his client. The very nature of such a contract implies that the proceeds of a judgment shall be divided as received on the percentage agreed to, in the absence of a specific agreement that one or the other was to retain a greater percentage of the initial payments. The reason for and the justice of this rule is so obvious that we need do no more than state it. We are of the opinion that, by his own admissions, respondent is guilty of the last charge of wrongfully withholding money which belonged to his client."

The manner in which respondent handled a portion of the $700 was likewise extremely reprehensible, to say the least. Even if the payment of the $268 to the Barth Mercantile Company and of the $200 to Maurice Barth, without the approval of the court, was unobjectionable, the disposition of the remaining $250 was wholly unjustified from any standpoint. Dodd L. Greer and he had earned a fee in some other litigation and the former settled with him that day for his portion of it, $500, by giving him a

check for $250 and two notes of $125 each, payable sixty and ninety days from August 1, 1929. He endorsed and delivered these two notes to Castillo and retained $250 of the $700 in payment of them, and while he testified that the Barth Mercantile Company had agreed that the little girl should have the benefit of these notes in the way of future advances, whether Greer paid them or not, Jacob Barth, one of the owners of the Barth Mercantile Company, testified that the notes were never delivered to the company, and it nowhere appears that any advances were ever made on their account, and it is clear that they, like the $2,500 note, were never paid.

It appears, therefore, that the services respondent rendered Castillo may be summed up thus: He procured a settlement of the estate for $4,200, $1,700 of which was paid in cash and $2,500 by the promissory note of the administrator, payable eleven months after date. Of this $1,700 he paid himself $1,000 as an attorney's fee and $250 in satisfaction of the two notes of $125 each, and the remaining $450 to the Barth Mercantile Company and Maurice Barth. In other words, respondent, without the approval of the court, paid himself $1,250 of it and members of his family $450, and all the guardian received was three promissory notes, totaling $2,750, which were never paid, and the settlement of $468 which, respondent testified, he owed. Not one dollar of the $1,700 cash reached Castillo or his ward.

It is our view that it would be unfair to the public to permit one guilty of such conduct as this to continue longer to practice law, a profession the very nature of which demands the highest fidelity to the cause of a client whose rights he undertakes to acquire or protect. And, especially is this true when the record discloses that this is not the first time that

person has been guilty of conduct very similar in nature. The State Bar calls our attention to the fact that respondent was disbarred in 1920 by the Supreme Court of an adjoining state upon grounds very much the same as these (*In re Barth,* 26 N. M. 93, 189 Pac. 499), and, while the record discloses that the same court reinstated him four years later, the facts giving rise to this proceeding indicate that he did not profit by that experience sufficiently to cause him to refrain from engaging in similar conduct.

It is our judgment that respondent should be disbarred from practicing law in this state, and such is the order of the court.

LOCKWOOD, C. J., and ROSS, J., concur.