416 P.2d 975

**In the Matter of a Member of the State Bar of Arizona, Francis J. BROWN, Respondent.**

**No. 8665.**

Supreme Court of Arizona.

In Banc.

July 25, 1966.

Edmond J. Brash and Leon S. Jacobs, Phoenix, for respondent.

John S. Hobbs, Jennings, Strouss, Salmon & Trask, Phoenix, for State Bar.

McFARLAND, Justice.

Formal charges were filed against Francis J. Brown, hereinafter referred to as respondent, to the effect that he had violated the Canons of Professional Ethics of an attorney in that his conduct was in violation of Canon 44. Canon 44 deals with the right of an attorney to withdraw from employment once it is undertaken. This Canon states that a lawyer can withdraw from a case only for good cause and that even the desire and consent of his client is not always sufficient; that a lawyer cannot "throw up the unfinished task to the detriment of his client except for reasons of honor or self respect"—also that even in a proper case the lawyer may withdraw from his employment only after due notice to his client so that he may employ other counsel.

On April 16, 1964 respondent was charged with the following violation:

" 'That shortly after January 28, 1959, one Amos W. Lake, et ux., dba A. W. Lake Company retained Respondent to represent them in connection with an action against them by Union Interchange, Inc., a California corporation; that this matter was ultimately set down for trial and that the Respondent intentionally failed to appear on the day set and failed to properly petition the court for leave to withdraw as counsel for the said Amos W. Lake, et ux., dba A. W. Lake Company, and failed to give timely notice to the said Amos W. Lake, et ux., dba A. W. Lake Company, of his intention not to appear at said trial, which failures resulted in a judgment by default against the said Amos W. Lake, et ux., dba A. W. Lake Company, to the detriment and damages of said defendants; all of which constitute violations of ARS 32–267(8) and Canon 44 of the Canons of Professional Ethics.' "

The evidence presented before the bar was to the effect that Union Interchange, Inc., a California corporation, in 1959 sued one Amos W. Lake, et ux., dba A. W. Lake Company, hereinafter referred to as Lake, for payment of a contract for an ad in the U. I. Brokers Bulletin and the U. I. Buyers Digest for the sale of his place. He took a copy of the summons and complaint to the respondent, and according to Lake's testimony, respondent told him that some cases in regard to Union Interchange, Inc. had already been tried in Arizona and for him not to worry about it—that it would be dismissed.

The time to answer was extended by agreement with the attorney for Union Interchange, Inc. and after approximately one year had elapsed, respondent filed an answer. Lake advanced the cash for filing the answer.

The answer set up two defenses, the first being that Union Interchange, Inc. was a California corporation and had not qualified to transact business within the state of Arizona. The second was an allegation of fraud.

In March, 1960 Union Interchange, Inc. filed a motion to set the case for trial and it was set down for trial on October 25, 1961. On August 23, 1961 respondent's secretary notified Lake that the case was set for

trial on October 25, 1961. On October 24, 1961, the day before the trial, she again notified Lake and informed him that she had been unable to get in touch with respondent. Neither Lake nor respondent appeared at the trial and default judgment was taken against Lake in the sum of $598.30.

The Bar Association of the State of Arizona did not make any finding of facts, but did find "that the respondent intentionally failed to appear at the trial of which he had ample notice." We have recognized that evidence of unprofessional conduct by attorneys must be clear and convincing before disciplinary action is taken. In re Rogers, 100 Ariz. 214, 412 P.2d 710; In re Lewkowitz, 70 Ariz. 325, 220 P.2d 229; In re Sweeney, 51 Ariz. 9, 73 P.2d 1349; In re Myrland, 43 Ariz. 126, 29 P.2d 483.

We have also held that this court is a trier of the ultimate facts. In re Tribble, 94 Ariz. 129, 382 P.2d 237. We have recognized, however, that the recommendations of the Board of Governors should have serious consideration. In re Rogers, supra; In re MacDonald, 56 Ariz. 120, 105 P.2d 1114.

We agree with the finding of the Bar Association that the respondent intentionally did not appear at the trial; however, this case requires a finding of the facts as to why he did not appear at the trial.

There is conflict in the testimony of Lake and respondent. The evidence shows that Lake had both financial and domestic difficulties and respondent had helped him and advised him as to both. In this regard Lake testified "that he was a help." Lake said the first time he went to respondent it was for assistance in establishing his identity as the only heir to his mother. For this he paid a fee of $20.00. The remainder of the cases were advisory, for which no fees were paid, or were for collections of accounts on a contingent basis in which respondent retained a percentage of the money collected for his fee.

Lake testified that he took the summons and complaint filed against him in the Union Interchange, Inc. case to respondent; that respondent told him there had already been cases filed by Union Interchange, Inc. against others and that "they would dismiss it, just throw it out because they are not supposed to operate here." Lake also said he did not discuss attorney fees with respondent concerning that particular lawsuit—that there was not to be a lawsuit. He also said that he never again, until after judgment, discussed the case with respondent, but admitted he had seen him many times and discussed other cases with him.

Respondent testified Lake was in financial difficulties and had come to him on numerous matters and that he had tried to help him; that the only fee Lake paid him was the $20.00 in regard to his mother's estate. He said Lake had come to him when he had been served with the summons and complaint by Union Interchange, Inc. and told him he was in financial difficulties. Respondent said he filed the answer containing the two counts as defenses, but that later he made a search of the law and became firmly convinced there was no way he could prevail in the lawsuit. He explained in detail why he did not think the defense of fraud could have been proven in that case.

His advice in regard to the first count was proven to have been justified by the decision of this court in Union Interchange, Inc. v. Mortensen, 90 Ariz. 112, 366 P.2d 333, in which this court on November 22, 1961 held that in securing ads Union Interchange, Inc. was engaged in interstate commerce and therefore did not have to comply with the Arizona statutes (A.R.S. § 10–481) relating to doing business in this state.

Respondent further stated that he had talked to the attorney for Union Interchange, Inc. and told him that Lake did not have any money and wanted to make monthly payments of $10 or $15; that the attorney had agreed to waive attorney's fees and interest if Lake would do this. Respondent stated he had advised Lake of

his conclusions—that there was no way Lake could prevail in the lawsuit.

In answer to a question by Mr. Hill, respondent said:

" 'I talked to Mr. Lake and told him that it was like throwing money down a rat hole to incur any more attorney's fees and expenses when we could not prevail in our defense. I told him I wasn't going to do any more work until he brought me some money; that I had done enough for him and I couldn't continue to work for nothing. He never brought in any money to apply on his account.' "

He also testified:

" * * * 'But I told him. I told him many, many a time, too, I wasn't going over there and assert a defense like that. * * *' "

Respondent further stated that had Lake come in he would have accompanied him to the trial but that Lake did not have a defense and it would not have accomplished anything other than to delay the court. In substance, his advice to Lake was that he did not have a defense to the lawsuit; that it would be useless and a waste of money to incur any more attorney's fees by making an appearance at the trial.

Respondent also testified that he had not charged Lake anything for his services and had told him he would not do any more work for him unless he was paid a fee.

Counsel for respondent contend that he had not violated Canon 44 of the Canons of Professional Ethics of an attorney in that Lake had not been damaged because of respondent's failure to appear at the trial, pointing out that respondent was correct in his advice to Lake in regard to Count 1; and forcibly argued that the second defense, based on fraud, was not valid under the written agreement which Lake admitted he signed.

We do not feel that we are called on to pass upon the question of whether Lake was damaged by the failure of respondent to appear at the trial. Our findings are that respondent advised Lake there was no valid defense to the lawsuit and that it would be a useless expense to make an appearance at the trial.

The rules of evidence in regard to unprofessional conduct by attorneys must be clear and convincing before disciplinary action will be taken. In re Rogers, supra; In re Lewkowitz, supra; In re Sweeney, supra; In re Myrland, supra. We therefore feel we must also find it has not been proven that Lake did not accept the advice of respondent, but on the contrary, Lake's actions in not conferring further with respondent after receiving his advice and in not taking any other affirmative action, show that he did accept the advice of respondent.

Canon 44 also provides " * * * If the client * * * persists over the attorney's remonstrance in presenting frivolous defenses * * * the lawyer may be warranted in withdrawing on due notice to the client, allowing him time to employ another lawyer. * * * "

■ Respondent told Lake he could not prevail in the defenses and advised him it would be "like throwing money down a rat hole to incur any more" expense; that he would not present such defenses. Under this advice Lake had the choice of employing another attorney or letting the case go by default. He chose the latter. Letting a case go by default under such circumstances does not require a withdrawal as an attorney of record and does not violate Canon 44 in that regard.

■ However, respondent did owe the court a duty either to appear, withdraw as attorney, or to advise both the court and counsel that he would not appear, and that judgment might be taken in his absence. Every attorney who files an answer in a case owes this duty to the court. This is a matter for the trial courts to control and for their action. We do not condone the failure of lawyers to appear at a hearing or at a trial. We admonish not only the respondent, but all lawyers, of this duty.

Proceedings quashed.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and UDALL, J., concur.

NOTE: Justice LORNA E. LOCKWOOD did not participate in the determination of this matter.