478 P.2d 510

**In the Matter of Nathan HOLT, a Member of the State Bar of Arizona, Respondent.**

**Nos. 9464, 9715.**

Supreme Court of Arizona,
In Banc.
Jan. 4, 1971.

———◆———

Leon S. Jacobs, James A. Struckmeyer, John J. Dickinson, Robert J. Welliever, Phoenix, J. Mercer Johnson, Tucson, Darrell F. Smith, Mesa, for respondent.

Royal D. Marks, Sheldon Mitchell, Phoenix, for the State Bar of Arizona.

KRUCKER, Judge, Court of Appeals.

This is an original proceeding for disciplinary action of attorney Nathan Holt under 17 A.R.S. Rules of the Supreme Court, Rule 27 et seq. Findings of fact, conclusions of law, and recommendations for disbarment were presented to this Court, as found both by a local administrative committee of the State Bar of Arizona for District No. 4-b, and the Board of Governors of the State Bar of Arizona, on two causes of action, Nos. 9464 and 9715.

On August 17, 1967, the Administrative Committee 4-B of the Arizona State Bar received a letter pertaining to Cause No. 9464, written by Orme Lewis, setting forth items pertaining to Mr. Holt when he had been a member of the law firm of Lewis, Roca, Beauchamp & Linton. Another letter was also received by the Committee setting forth complaints in the hereafter-denominated Mamerow matter. Upon respondent's failure to answer the Committee's inquiries, the matters were referred to Royal D. Marks for investigative purposes. Following at least one conference with respondent, and several unsuccessful attempts to get together again, an Order to Show Cause was served on respondent which contained 20 counts and directed him to appear.

Following two continuances, a hearing was finally held on May 29, 1968, counsel examining and cross-examining witnesses. A physician's report as to respondent's health was allowed to be filed late. On June 18, 1968, the Committee unanimously recommended disbarment. On November 2, 1968, proceedings were held before the Board of Governors, who affirmed the findings of the Committee. Respondent then requested and received a Supreme Court Order remanding the matter to the Committee. Such a hearing was had February 21, 1970, and supplemental facts were presented.

In the meantime, on May 7, 1969, a new Order to Show Cause was served upon respondent (cause No. 9715, hereinafter referred to as the Pratt matter). Separate hearings were scheduled and finally held in September, 1969. On April 7, 1970, the Board of Governors concluded respondent's conduct violated Canon No. 11 of the Cannons of Professional Ethics and recommended that he be disbarred.

In May 5, 1970, the entire record was then submitted to this Court on both matters, and they were ordered consolidated. Briefs and memorandum by counsel were allowed to be filed, and the matter was deemed submitted for decision on August 24, 1970.

The charges placed against Mr. Holt were varied. In Cause No. 9464 there were charges relating to mismanagement of law firm or client funds.[1] There were seven charges relating to respondent's having let time limits run against various clients' interests.[2] There was one charge of issuing a false divorce decree and one charge of failing to respond to Committee's complaints. And, in regard to Cause No. 9715, respondent was charged with unduly withholding settlement funds and then paying with a check written on insufficient funds.

The respondent, Nathan Holt, testified in order as to each of the counts charged in Cause No. 9464. He admitted endorsing the checks and not depositing them to the firm account. He admitted letting time limits run. In each of these matters, however, he indicated he paid his injured clients from his own funds for errors he had made; or, in charging clients for other matters, then took a corresponding decrease in his fee. None of the funds involved ever went toward respondent's personal enrichment.

As to the fictitious divorce decree, the facts established that Mr. Mamerow was given a purported copy of a divorce decree with date and name of the judge stamped thereon. No complaint for divorce had been filed and no divorce had been granted. According to the testimony of Mr. Mamerow, the respondent told him the divorce had been granted. The falsity of the document had been discovered when Mr. Mamerow had taken his decree to the Social Security office to stop payments made to his "ex-wife." That office informed him of the irregularity in his decree. Respondent's testimony on whether or not he had issued the decree was as follows:

> "MR. WESTOVER: The point is this, though, Nate, did you give him the decree representing to him that it was a decree that had been entered when in fact you knew it hadn't been entered? That's the point.
>
> MR. HOLT: No."

He also testified:

> "THE WITNESS: All I am telling the Committee is this. I do not deny that this document was delivered to Mr. Mamerow, and I am not saying that I did deliver it to Mr. Mamerow."

1. The Committee found respondent culpable of nine:
1. Endorsing a $4,410 check from Allstate Insurance Company and not depositing it in the firm account.
2. Endorsing a $1500 check from Allstate Insurance Company and not depositing it in the firm account.
3. Improperly billing client, Ohio Casualty Insurance Company, for $1,506.76 for outlays to third persons.
4. Improperly billing $2,414.14 to client, Empire Fire & Marine Company, and then endorsing the check and not depositing it in firm account.
5. Improperly billing client, Allied Mutual Insurance Company, for $2,523.77, and then endorsing the check and not depositing it in firm account.
6. Paying $635 to A. M. Moore from firm account for own error in mismanaging Moore's affairs.
7. Paying $1,754.51 to J. Fawbush from firm account as a charitable gesture.
8. Improperly billing client Goettl Bros. Metal Products, Inc.

9. Improperly withholding for four years a check to Albert M. Blum for a settlement.

2. The Committee found Mr. Holt culpable of:
1. Permitting the statute of limitations to run on the personal injury action of Oliver M. Jenkins.
2. Permitting the statute of limitations to run on a subrogation claim of Allied Mutual Insurance Company.
3. Failing to pursue the personal injury action of Robert C. Witt.
4. Failing to file an appeal on behalf of Reliance Insurance Company.
5. Failing to pursue the personal injury claims of James A. West.
6. Permitting the statute of limitations to run in the personal injury action of James Q. Rainey.
7. Permitting the statute of limitations and the lien rights of client, Goettl Bros. Metal Products, Inc., to expire.

He admitted, however, he was in charge of the Mamerow matter:

"THE WITNESS: I am saying this. I have no independent recollection of causing this document to be prepared.

I am sure that I was in charge of this file. The obligation on this was mine, and I didn't mean to indicate * * * someone had helped me on this case. I have no independent recollection of dictating this thing. I cannot tell from the copy here, but perhaps my secretary at that time might have an independent recollection in regard to this matter. I am not saying I didn't do it, Mr. Chairman."

In further explanation, the respondent testified:

"* * * An amended complaint was prepared and was never filed.

I didn't follow through on that. I candidly have no recollection at this point, and I am not saying that it did not happen. I am only saying that I can't say that it did or did not happen that I delivered the divorce decree to Mr. Mamerow. There is no doubt in my mind that that divorce decree was prepared either by me or by the other individual who I had doing some work on this file.

It was a file under my direction, and I am not saying that someone else should have done anything beyond what they did.

What it is in essence and what I am trying to say is this, that I realize I did not adequately follow through on Mr. Mamerow's matter, and it is quite possible that I did mislead Mr. Mamerow in regard to what had transpired."

The questions presented in this case are unique in many respects. It was testified by members of the bar that the respondent, Nathan Holt, prior to this case had enjoyed the reputation of being an efficient lawyer with complete integrity. Lawyers testified that they had handled suits against him and never had any reason to question his integrity, honesty or competency.

Two jurists, the Honorable William A. Holohan, Judge of the Superior Court, and the Honorable Henry S. Stevens, Judge of the Court of Appeals, testified as to his personal integrity, professional competence and ability. Respondent has served as a member of the Board of Governors of the State Bar and on the Board of Directors of the Maricopa County Bar Association, having been elected by members of the Bar to both of these positions.

The evidence shows, and the respondent admits, offenses which his attorney in the hearings called "past defalcations."

The respondent explained his work as follows:

"At that time, I was doing predominantly, as I have done since, oh, about 1955 up to the present time, litigation work primarily in the field of insurance defense work.

I probably had a tendency to undertake more than I was actually capable of handling properly.

I represented at that time approximately eight companies which was the vast majority of my work.

They were companies that those of you who have been involved in this type of work are familiar with their attitude.

On many occasions, they desire that one particular individual in whom they have faith, properly or not, handle their litigation.

It was during this period of time that I was undertaking more and more of this; and, also, I went through what was a fairly traumatic personal experience, and quite candidly, I exercised some very poor judgment on a number of items.

I am not making that statement in regard to any recriminations that somebody was giving me too much work. I was a big boy. I was endeavoring to get my hands on all the work I could and tried to do it adequately.

That, generally, is the background of the situation in regard to generally the

time area that we are talking about here."

The testimony and explanations that were given are not sufficient to explain the actions of the respondent in regard to "the defalcations" nor are they sufficient justifications for his actions.

One of the members of the Committee in frankness stated:

"Now, to be very frank with you, Mr. Westover, the big missing piece in this jigsaw puzzle, as far as I am concerned, is this great trauma or pressure that Mr. Holt was under, and as far as I am concerned at least, and I don't speak for the other members of the Board, unless I hear a good explanation. * * *"

Mr. Westover, his attorney, stated:

"* * * I told Nate that this might have to be resolved, and Nate said to me, 'The risk, the personal risk that is involved in my own personal life in making the disclosure is so great to me, my own personal feelings, that I would prefer to be disbarred than to risk the consequences of it'. * * *"

The respondent, after consulting with his attorney, testified:

"MR. HOLT: Well, quite candidly, what we have been talking about involves a decision on my part which I feel, if I full [sic] explained it, would jeopardize what to me is, and I mean this precisely the way I say it, what to me is the relationship I have with the most important people in the world to me * * * and I respectfully decline to go into it any further."

The record thus shows that although the respondent did not, in the defalcations, financially harm the public, his conduct was such that if it were repeated it might be very harmful to some future clients.

Given the above evidence, we believe there is clear and convincing evidence of respondent's unprofessional conduct. In re Brown, 104 Ariz. 387, 453 P.2d 958 (1969). We believe that the accounting complaints listed in Cause No. 9464 are more appro-

priately settled with the firm and the client's account, but that such repeated conduct on the part of a lawyer is nevertheless highly reprehensible. We also believe that respondent's conduct in regard to delinquencies as to legal time limits for clients is highly improper legal practice and especially so due to its repetitious nature. However, we believe the most appropriate procedure for remedying this conduct is the malpractice action. We must conclude, however, the defalcations and the matter of the fictitious divorce decree warrant disbarment. We believe such conduct is the same type of conduct which a lawyer's skills uniquely place him in a position to perform, and which must be rigorously guarded against. Cf., In re Bixer, 96 Ariz. 59, 391 P.2d 917 (1964) (attorney mismanaged clients' funds); In re Barth, 46 Ariz. 281, 50 P.2d 564 (1935) (mismangagement of funds held on behalf of client).

It is therefore ordered that respondent, Nathan Holt, be and hereby is disbarred from further practice of law in the State of Arizona.

LOCKWOOD, C. J., and UDALL and HAYS, JJ., concur.

Note: Vice Chief Justice FRED C. STRUCKMEYER, Jr. having requested that he be relieved from consideration of this matter, Judge HERBERT F. KRUCKER was called to sit in his stead and participate in the determination of this decision.